# STATE OF MICHIGAN

# COURT OF APPEALS

VALERIE DURBIN,

        Plaintiff-Appellee,

v

RANDALL C. MONDAY,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2015

No. 322027
Macomb Circuit Court
LC No. 2013-002166-DM

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Randall C. Monday, appeals by right the judgment of divorce. Specifically, he contests the trial court's decision to grant plaintiff, Valerie Durbin, sole custody of the minor child and argues that it erred in awarding parenting time and attorney fees. Because we conclude there were no errors warranting relief, we affirm.

Monday argues the trial court erred by failing to find that the child had an established custodial environment with both parents. He also argues the trial court erred when it concluded that the statutory best-interest factors favored Durbin and that she should be awarded sole custody, despite his request for joint custody.

This Court must affirm all custody orders on appeal "unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "Under this standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (quotation marks and citations omitted). When reviewing the trial court's discretionary rulings in a child custody dispute, this Court must affirm the trial court's exercise of discretion unless it "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). The same standards apply to the trial court's parenting-time decision. *Id.* at 716.

Under MCL 722.27, "a trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). Whether the child has an established custodial environment is a question of fact. *Berger*, 277 Mich App at 706. A child

-1-

has an established custodial environment when "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

> An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability and permanence. [*Berger*, 277 Mich App at 706.]

Monday argues that the trial court erred when it found that the child had an established custodial environment with Durbin alone. The trial court essentially found that Monday did not significantly participate in the child's care during the time at issue. On this record and given the child's age, we cannot conclude that the trial court's finding concerning the child's custodial environment was against the great weight of the evidence. MCL 722.28. Monday failed to demonstrate that his relationship with the child was marked by security, stability and permanence during the period at issue. Instead, the evidence showed that he has been in and out of the marital home throughout the child's young life, and has not taken the lead in providing basic care for the child during the times that Durbin was working or sleeping. Though he exercised parenting time as he was allotted under court orders after Durbin sued for divorce, his role in the child's life has been inconsistent. The trial court's finding that the child had an established custodial environment with Durbin alone was not against the great weight of the evidence.

After it decides whether there is an established custodial environment with one or both parents, the trial court must establish an appropriate custody arrangement for the child consistent with the child's best interests. In doing so the trial court must consider the statutory best-interest factors provided under MCL 722.23. *Pierron*, 486 Mich at 89-90. A trial court is not required to give equal weight to all the best-interest factors—it "may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

Regarding the "love, affection, and other emotional ties existing between the parties involved and the child," MCL 722.23(a), the trial court found that Durbin "has been the child's primary caregiver and has clearly established a stronger emotional tie with her." The trial court also found credible Durbin's concerns about Monday's "ability to care for the minor child given her tender age." Accordingly, it determined that MCL 722.23(a) favored Durbin.

Monday presented evidence suggesting that he shared some emotional ties and affection with the child. However, it was clear from the record that Durbin has a stronger emotional bond with the child, and that she provides love and affection to the child on a level that Monday does not. Durbin provides the primary care for the child during the times she is not at work or sleeping, and she stated that she frequently plays with the child. Considering the young age of the child, there was little evidence presented regarding which parent the child is more emotionally bonded with; however, the record demonstrated that Durbin provides love and affection for the child more consistently. The trial court's finding on this factor was not against the great weight of the evidence.

-2-

The trial court found that MCL 722.23(b), which applies to the parties' ability to give the child love, affection, and guidance, "clearly" favored Durbin because Monday's "ability to parent will be negatively impacted by his anger issues, selfish tendencies, and his inability to accept responsibility for his poor decisions." Durbin testified that Monday suffered from anger problems and that his presence in the child's life has been inconsistent. Further, she testified that Monday is not always attentive to the child when he is responsible for providing care; he has trouble waking up in the morning to care for the child and sometimes is inattentive to the child when working from home. Though Monday stated that he has provided love and affection to the child to this point, we must defer to the trial court's superior ability to judge credibility. *Berger*, 277 Mich App at 705.

MCL 722.23(c) involves the capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs. The trial court found that this factor "strongly" favored Durbin. Specifically, the trial court found that Durbin's employment "provides the minor child with a stable, safe and appropriate home, good private health care, and clearly meets all the child's needs including food, clothing, shelter, and medical care." By contrast, the trial court found that Monday "struggles to earn even minimum wage." During the trial, there was a marked difference between the apparent capacity of the parties to provide the child with material needs. Durbin's fulltime employment with Ford provides stable earnings and health insurance for the child. Conversely, Monday works on a freelance basis, and has not made more than $20,000 in any year since he was laid off from fulltime employment in 2008. Monday stated that he expects to increase his earnings in the future, but the trial court found that testimony incredible. To this point in the child's life, Durbin has paid for nearly every expense related to the child's material needs. Accordingly, the trial court's finding on this factor was not against the great weight of the evidence.

As for the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity, MCL 722.23(d), the trial court found this factor strongly favored Durbin. The trial court found that Durbin has provided the child a stable living environment since her birth, while Monday has lived in at least four residences since the child's birth. Monday currently resides in Taylor, which means that the child is exposed to long trips in the car each time she is transported for parenting time exchanges. Durbin continues to reside in the marital home with the child, and through her employment, she has the means and capacity to maintain that home as a stable environment for the child as she grows up. The trial court's finding was not against the great weight of the evidence.

MCL 722.23(e) involves the permanence, as a family unit, of the existing or proposed custodial home or homes. The trial court found that this factor favored Durbin because she offers a more stable family unit. Specifically, the trial court found that Durbin can continue to utilize her mother and Ames to assist in caring for the child while she is at work. Conversely, the trial court found that Monday's circle of family and friends is more limited, and that he utilized Ames and Durbin's mother even during his own parenting time to help care for the child. While in Durbin's custody, the child will be surrounded with a stable family structure. Monday testified that he has family in the area of his home in Taylor, including his mother and stepfather, but there was also evidence suggesting that he does not get along with his stepfather. Considering this Court's deference to the trial court's determinations of witness credibility, we

-3-

cannot agree that the trial court's finding that MCL 722.23(e) favored Durbin was contrary to the great weight of the evidence.

MCL 722.23(f) involves the moral fitness of the parties involved. The trial court found that this factor favored Durbin. The trial court found that Monday had engaged in inappropriate conduct, including signing Durbin's name on a joint 2012 income tax return without her permission, and then depositing the tax return in his personal bank account, despite the fact that the refund was based largely on her income. The trial court also found that Monday had been evasive and inconsistent in his testimony during the trial. The trial court's findings were supported by the record.

MCL 722.23(g) involves the mental and physical health of the parties involved. The trial court found that this factor "very strongly favors" Durbin. The trial court found that there was no evidence that Durbin has any mental or physical health issues. However, the trial court found that Monday has a history of depression and had made threats in the past to harm himself. Further, the trial court found that Monday likely has "a serious, underlying, undiagnosed mental health issue" based on his pattern of secretly recording Durbin during her parenting time and counseling sessions. The trial court also found that Monday had offered to leave Durbin and the child once in exchange for a cash payment and a promise not to seek child support, and also that he possessed major anger problems.

There was sufficient evidence to support these findings. Durbin testified that Monday had made statements suggesting he might harm himself. She also stated that he had offered to leave her and the child alone in exchange for $30,000 and a promise not to pursue child support. Durbin also testified regarding Monday's anger issues, including dangerous road rage incidents. Monday also admitted to systematically attempting to record Durbin's parenting time and counseling sessions involving both parties. And this evidence permits an inference that Monday had mental health issues. Accordingly, the trial court's finding that MCL 722.23(g) favored Durbin was not against the great weight of the evidence.

MCL 722.23(j)[1] involves the willingness and ability of each of the parties to facilitate and encourage a continuing parent-child relationship between the child and the other parent. The trial court found that this factor strongly favored Durbin because she demonstrated a willingness to promote the child's relationship with Monday, whereas Monday had not shown an ability to work with Durbin and had violated numerous court orders regarding parenting time. Ross Beckley, who held counseling sessions with the parties eight times, testified that Monday seemed uncooperative in working with him or Durbin regarding the future of the child; further, Durbin stated that Monday routinely makes unilateral demands regarding parenting time without any room for compromise or thought to the best interest of the child. As noted, Monday moved a significant distance away from the marital home in Romeo to a home in Taylor, which will make

---

[1] The trial court did not consider MCL 722.23(h) or MCL 722.23(i) because of the young age of the child. The trial court also stated that MCL 722.23(k), which involves domestic violence, was inapplicable and did not favor either party.

exchanges of the child in the future difficult and time-consuming. The trial court's finding that MCL 722.23(j) favored Durbin was properly supported by the record evidence.

After analyzing the best-interest factors, the trial court found that Durbin had established by clear and convincing evidence that she should be awarded sole legal and physical custody of the child. Though Monday contests the trial court's findings regarding the best-interest factors, he primarily disputes the trial court's assessments of credibility. But this Court will not second-guess the trial court's credibility assessments. *Berger*, 277 Mich App at 705. On this record and given the trial court's findings, we cannot conclude that the trial court abused its discretion when it awarded Durbin sole custody.

Monday also maintains that the trial court made a legal error when it failed to separately address his request for joint custody. Under MCL 722.26a, a trial court must separately address such requests; in doing so, the trial court would have to determine if joint custody is in the best interest of the child, considering "whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child" in addition to the MCL 722.23 best-interest factors. MCL 722.26a(1); see *Mixon v Mixon*, 237 Mich App 159, 162-163; 602 NW2d 406 (1999).

However, in this case, Monday did not properly request joint custody. In his response to Durbin's suit for divorce, Monday requested sole custody. Further, during the trial he only argued that he should be awarded full custody of the child. Monday claims in his brief on appeal that he requested joint custody in his "Trial Brief" and he attaches a copy of this document as an exhibit on appeal. But there is no reference in the lower court record to this document and, in any event, the brief reference to joint custody within that document was insufficient to raise this issue before the trial court. Moreover, when summarizing the parties positions, the trial court stated on the record that Monday was requesting sole custody and he did not object or correct the trial court's summary. Accordingly, this argument is meritless.

Monday next challenges the trial court's order regarding parenting time; he contends that it was in the child's best interests to order an equal split of parenting time. "Although appellate review of parenting-time orders is de novo, this Court must affirm the trial court unless its findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Berger*, 277 Mich App at 716.

As with every decision involving custody, the court must be guided by the child's best interests. *Id.* Under MCL 722.27a(1), "[i]t is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents . . . ." Accordingly, the trial court should grant parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1).

Monday argues the trial court should have awarded him more parenting time because he and the child had become accustomed to having more parenting time before the judgment. However, as previously discussed, the trial court made extensive factual findings when it considered the issue of custody. Regarding parenting time, the trial court found that Monday had

repeatedly violated court orders regarding parenting time and was generally uncooperative with the court and Durbin. Further, the trial court found that Monday's "inability to communicate with [Durbin] regarding parenting time surely indicates future problems with exchanges and, as the minor child gets older, the stress surrounding parenting time exchanges will not be in her best interest." The trial court also stated that the "constant conflict this family has endured and the struggles between the parties would only work to damage this young child's mental and emotional health." The trial court also recognized that Monday "does love his daughter despite his challenges and that the bond he has now should be maintained." The trial court awarded Monday parenting time every other weekend, two hours on a weeknight each week, and a rotating schedule of parenting time on major holidays, as well as extended parenting time during the child's summer vacation.

The trial court's parenting-time order was supported by the evidence. The trial court found that most of the MCL 722.23 best-interest factors favored Durbin, but nevertheless awarded him a substantial parenting time schedule, albeit one that was less than an equal split with Durbin. Monday does not make any cogent argument on appeal regarding why the trial court's order was inappropriate. The trial court did not err in establishing the parenting time schedule.

Monday also argues that the trial court erred by failing to make specific findings regarding the factors listed in MCL 722.27a(6). By the plain language of MCL 722.27a(6), a trial court may consider a list of factors when determining the frequency, duration, and type of parenting time to be granted. MCL 722.27a(6). The statute is explicit that the trial court is not required to make specific findings on the record regarding those factors; rather, it may do so. MCL 722.27a(6). In any event, the trial court specifically stated that it had considered the factors listed in MCL 722.27a(6) in determining parenting time. Accordingly, the trial court did not make any legal error regarding its parenting time order.

Monday next argues the trial court erred when it denied his request for attorney fees. Specifically, he contends that there is a significant disparity in income between him and Durbin. He argues that in order to pay his court-ordered child support, he should not be forced to pay his own attorney fees. This Court reviews the findings underlying a trial court's decision on a request for attorney fees for clear error. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). However, "we review the court's decision whether to award attorney fees and the determination of reasonableness of the fees for an abuse of discretion." *Id.*

"The general rule in Michigan is that absent authorization by statute, court rule, or contract, attorney fees are not recoverable." *Id.* at 129. In the context of divorce actions, attorney fees "are awarded only as necessary to enable a party to prosecute or defend a suit." *Gates v Gates*, 256 Mich App 420, 438; 664 NW2d 231 (2003). Further, "[i]t is well settled that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Id.* In this case, the trial court determined that Monday was not entitled to an award of attorney fees despite the disparity in income:

> [Monday] requested to be awarded $7,500 in attorney[] fees, which represents his total cost of his representation by this counsel based upon the inequity of the party's income. [Durbin] requested . . . attorney's fees based upon [Monday's]

repeated violations of the court orders . . . . [Monday's] request for contribution is reasonable given the substantial inequity of the party's current economic position. However, the court is in the mind that [Monday's] repeated violation of this court['s] order caused [Durbin] to incur substantial additional costs. Therefore, the court is satisfied that attorney's fees should not be awarded to either party.

Monday again focuses on the disparity between the parties' incomes. It is true that throughout the marriage and divorce, Durbin has earned significantly more than Monday; Durbin earns approximately $90,000 per year, while Monday has earned between $10,000 and $20,000 per year through his freelance audio and video technician work. However, Monday stated that he expects to increase his income in the future by acquiring more clients and work.

In the judgment, the trial court ordered Monday to pay $369 per month to Durbin in child support. Even if he does not increase his annual income, the trial court did not abuse its discretion. Monday does not argue on appeal how he will be unable to meet the obligations of his support payments and attorney fees simultaneously; he simply argues that he is entitled to attorney fees based on the disparity of annual income alone. The trial court reasonably concluded that considering Monday's violations of parenting time orders, which required him to file several motions and return to court several times during the divorce, awarding Monday attorney fees would not be appropriate.

There were no errors warranting relief.

Affirmed.

/s/ Deborah A. Servitto
/s/ Michael J. Kelly